Sí/fimn, Chief-Justice
 

 As I concur in the opinion delivered by my brother Gaston, I should be satisfied with merely saying that, were the question one of less consequence than it is. But upon a subject of such universal interest, involving the rights and security of creditors, I think it useful that the opinions of all the Judges should be fully known
 
 ;
 
 and therefore that it is proper for me to say, that I entirely concur both in his reasons and in the conclusions to which they hare led him.
 

 I wish, also to state, that for the judgment the court is now giving we hare the authority of the clear opinion of Chief-Justice Henderson; who heard
 
 the
 
 arguments of this case at the last term and expressed himself strongly (that no construction could bo put on the statute but one Which absolutely avoids, as against prior creditors, conveyances not founded on a valuable consideration, without rendering the rights of creditors precarious — a danger which it is the sole object of the statute to obviate.
 

 ■ I will add a few observations upon the arguments at the bar for the plaintiff. It was admitted that if a donor be insolvent or in embarrassed circumstances, bis ¿¡ft is void and must be so pronounced by the court; upon the ground, that the circumstances attending the transaction itself, incontcstibly prove the intent. But it is said that no intent to defraud can be, or rather is necessarily to be collected, when the donor is not embarrassed and ids insolvency takes place long after the gift, because that circumstance occurring subsequently might never have happened and was not foreseen nor contemplated by the parties, and therefore is not evidence
 
 that the
 
 covinous purpose existed at time of the conveyance, and it is to the Intent then and then only we are to look.
 

 I agree that the fraudulent intent must move the par-
 
 *209
 
 fies to make
 
 the
 
 conveyance or exist in their minds at the time of its creation. But I cannot assent to the conclusion, that such an intent did not exist or may not-have existed, if the donor reserved property more than adequate to pay all the debts he then owed. On the contrary, it seems to me that what I consider the fraudulent intent is exhibited equally in both cases. What is a fraudulent intent, as described in the statute and by what acts is it to be manifested ? It is, to make a conveyance which may delay or hinder a creditor and to delay or-hindcr him. Now this is the necessary effect of every conveyance of a debtor’s property, and therefore, necessarily, the intent is that it should have that effect. The end in view must be to make the thing conveyed cease to be the property of him who conveys and become the property of him to whom it is conveyed, consequently to withdraw it from the creditor. There cannot be a conveyance, oven one for value, into which this intent does not enter. Hence the statute after enacting that all conveyances made with such intent shall be void, by the proviso, excepts from the peration of that enactment conveyances made
 
 bona fide
 
 and upon good, that is, valuable consideration. In such case the price is substituted for the thing conveyed; and the intent to withdraw the particular property although actually existing is not prima
 
 facie
 
 injurious to the creditor. But if there
 
 he mala fules
 
 that is, the further and distinct intention that the price, though an adequate one, shall not efficiently, for the purposes of the creditor, be a substitute for the property, but shall be so disposed of as to be beyond his reach then a conveyance for value is also avoided by the first broad words of the statute, and is not saved by falling within the proviso. Such must be the case with every conveyance not made upon valuable consideration. It must be founded, upon a design to exempt the estate from, the claim of the creditor, for the act of making the con* veyance can arise from no other intent, and inasmuch as no other fund replaces the property so intended to be exempted, that intent is injurious to the unsatisfied credit- or and amounts to covin within the statute. To set up
 
 *210
 
 the deed against the creditor, if it be effectual, hinders and defeats him. To make title under it in the donee arid to set it up against all the world was the very purpose of the deed. Wo cannot say that the parties intended to make the deed more than that it should he used in that way. Then if it was intended to constitute title in the donee and that title would defeat the creditor, the intention of making the deed must be to defeat him, which intention can be negatived only by the donee’s paying the debt. I grant that there is a difference between conveyances by insolvent and solvent donors ; but it does not consist in any difference of the intention of the parties as to the use to be made of the deed as a hindrance to the creditor. It consists only in the time when that use will be made of it. In both cases the purpose is to allege it against the creditor, though he thereby lose his debt, which is the fraudulent intent. In the former it is in contemplation to make that use of it immediately and absolutely to defeat the creditor, and this consequenc follows so directly that it is taken
 
 to
 
 he
 
 the sole
 
 object of the conveyance. Hence that was
 
 the
 
 intent of it. In the latter case, it is obvious that such.was not the sole purpose, because the debtor has other means of paying. But it is
 
 a
 
 purpose of it. The intention is to set up the deed against the creditor, whatever loss it may produce to him. It is'not supposed, it is true, that it will he immediately injurious to the
 
 creditor;
 
 for if lie receive his debt from the donor or raise it out of his other property, which the parties expect, it will not prove injurious. But .should that turn out otherwise, do not the parties mean that the donee shall, nevertheless,
 
 then
 
 insist on his deed and oppose it to the creditor ? And is not that necessarily the intention at the making of the deed and on which it was made ? It results in this: that the parties do not contemplate a use of the deed, which will presently work a loss to the creditor, but only such a one as will, in certain events have that operation. The intent of the deed is certain; the injurious effect contingent_ Tüe solvency or insolvency of the donor is not therefore the test of the intention; whether it be to hinder the
 
 *211
 
 creditors or not. It is only evidence of the expectations of the parlies as to the period when they would be under the necessity of giving that effect, practically to the deed. An express intent, different from that I have described cannot be required
 
 ;
 
 for that would be to make agift by an insolvent valid, if the donee was ignorant of the donor’s debts.
 

 It will be observed, that I consider in reference to an existing debt, the intent to be inseparable from the act; and therefore I conceive the law so pronounces it through the court. For it is not clearer that the parties intended that the conveyance should pass the property to the donee, than that it should bar the right of the creditor to satisfaction out of that property, which is an intention that lie should be barred altogether, should it so happen that the debtor has not or shall not have other property, and such an intention in reference to either of those states of facts satisfies the statute.
 

 As to subsequent creditors I cannot express myself more to my own satisfaction than Judge Gastos has already done.
 

 DaNIeu, Judge
 

 The defendant in this case resists the granting a new trial on two grounds. First, because the paper under which the lessor of the plaintiff sets up title
 
 to
 
 the land, is not a deed, but a testamentary writing, and should have been proven, as wills which pass real estate arc required by law to be proven. Secondly, that if the court should consider it a deeed; it was fraudulent as to the persons who were creditor’s of
 
 Henry O’Daniel
 
 at the time of its execution, and being declared fraudulent as to them, the law will make it fraudulent and void, as to subsequent creditors, and those who claim under them. I do not think the paper can be considered testamentary. I admit the form of the instrument is an immaterial circumstance, if the court can.collect from the writing that the maker intended it should be testamentary. (1
 
 Phil. Rep.
 
 1.) But I am unable to discover such an intention in the maker of the instrument. The maker has reserved to himself a life-
 
 *212
 
 estatc in tbc land — a circumstance which strongly rC-pels any thing like an intention to make the instrument operate as a will. No executor is appointed, there is in
 
 ft
 
 a consideration mentioned, and the maker in person acknowledged the instrument in open court to be his deed. I am of the opinion that the instrument is not a will, but a deed: a covenant to stand seised, which will pass the land to the remainder men, under and by the statute of uses, if it is not a fraudulent transaction. „
 

 The second, point to be discussed is, whether the deed was fraudulent as to the creditors of the grantor.
 
 H. O’Daniel
 
 had two creditors at the time the deed was by him executed, the sum due to one of them, was
 
 £12 10;
 
 the sum due to the other is not known.
 

 Fraud is a compound question of law and fact — the judgment of law on facts and intents. If the conveyance v'as made with an intent, and for
 
 the purpose to
 
 delay, hinder or defraud debts and accounts, then the law declares the conveyance fraudulent and void,
 
 QAct of 1715, c.
 
 38.) This act is nearly a copy of the Statute of the 13th
 
 Elizabeth.
 
 'Whether a conveyance was made with the intent to hinder, delay or defraud creditors is a question of fact, and in a court of law is to be determined by the jury. If the jury find the intent of the maker to have been fraudulent, the deed then becomes void in law. It is not an irresistible inference or conclusion of law, that the indebtedness of .the donor or grantor, at the time of executing the conveyance, makes it fraudulent and
 
 void;
 
 no, hot even for the debts then in
 
 being;
 
 but it is only a badge or argument of fraud which may be repelled by other evidence. Let us en-quire how the law stands upon this subject as to creditors at the time of conveyance. First, in the courts of law where the jury find the fact of intent or purpose, and the court pronounces the law upon the fact so found by the jury. Secondly, in a court of equity, where the chancellor pronounces both upon the fact, and the law. I think it will be found that the decisions in both courts have been substantially the same. If there is any differ
 
 *213
 
 ence of opinion, it arises from the manner the cases have been reported. In
 
 Twyne’s
 
 case, (3
 
 Coke’s. Rep.
 
 80,) the court said, “when a man being greatly indebted to sundry persons, makes a gift to his son, or any of his blood, without consideration,” that would be fraudulent.
 
 Cadogan
 
 v.
 
 Kennet, (Cowp.
 
 432.) Lord
 
 Mansfield
 
 says, that a man being indebted at the time of a voluntary conveyance, is an argument of fraud. In
 
 Doe
 
 v.
 
 Routledge, (Cowp. 711,)
 
 Lord
 
 Mansfield
 
 says again,
 
 “
 
 one great circumstance which should always be attended to in these transactions is, whether the person was indebted at the time he made the settlement, if he was, it is a strong badge of fraud.” His Lordship does not pretend to say it is
 
 per se
 
 fraudulent. In the saíne case, page 708, he remarks that the statute does not say a voluntary settlement shall be void. To be sure it is very difficult against fair honest creditors to support a voluntary settlement. It is laid down in a case by
 
 Hale,
 
 that a voluntary settlement may be good. Iii
 
 Salmon
 
 v.
 
 Bennet,
 
 (1
 
 Day 527,)
 
 the Supreme Court of Errors of Connecticut, declare the rulé, that mere indebtedness at the time will not in all cases render a voluntary conveyance void as to creditors. That an actual or express intent to defraud, need not be proven, for this would be impracticable in many instances, when the conveyance ought not to be established, and it may be collected from the circumstance of the case. In this case a voluntary conveyance to a child was held valid against existing creditors; the grantor having left at the time ample funds, unincumbered for the payment of his debts. But if the grantor be considerably indebted and embarrassed, or if the gift be unreasonably dispropor-tioned to his property, and leaving scanty provision for his debts, the conveyance would be void. In the courts of Equity where the Chancellor finds the facts and applies the law, it has nearly become an invariable rule to consider a man actually indebted and conveying voluntarily, always means to defraud existing creditors. — . Lord
 
 Hardxvicke
 
 expressed himself to that effect in the case in
 
 Townsend
 
 v.
 
 Windham,
 
 (2 Ves.
 
 1.)
 
 The rule
 
 *214
 
 seoms to have been strictly followed until the case of Lush
 
 v. Wilkinson,
 
 (5
 
 Ves.
 
 384.) This was a fishing’ bill filed by a subsequent creditor against the executor an(j w[,iow 0f —
 
 Cawood,
 
 praying an account ,of the personal estate, debts, &c. and that the deed of settlement made by
 
 Cawood
 
 for the benefit of his wife, might be declared fraudulent and void, as against creditors being voluntary. The bill charged that the deed of Settlement was subsequent to the marriage, and that
 
 Cawood
 
 was then in insolvent circumstances, or was •then indebted to several persons. The widow by her answer, stated that the deed was openly and
 
 bona jide
 
 executed, She denied her husband was insolvent at the time of executing it, or at any other time; she stated, that beside two debts, (which the property included in the deed, sought to be set aside was mortgaged to pay,) that her husband did not owe above a hundred pounds, and that his personal property considerably exceeded what he owed. No evidence was produced by the plaintiff.— Lord
 
 Mvanly,
 
 master of the Rolls, said he had great doubt whether the plaintiff had a right to come- without proving any antecedent debt, (he then reflects and recollects the widow admitted in her answer, he owed debts to the amount of ¡8100.) He then says a single debt will not do. Every man must be indebted for the common bills of his house, though he pay them every week. It must depend upon this, whether he was iii insolvent circumstances at the timo. The bill was dismissed. In
 
 Montague
 
 v. Lord
 
 Sandwich,
 
 (12
 
 Vesey,
 
 136,) younger children brought the bill, and not creditors. Lord
 
 Roshjn
 
 declared that post nuptial settlements were void, as to those wdio were creditors prior to the date of the deed. He directed an enquiry whether the maker was indebted previously to the making the deed, and to what amount. In
 
 Kidney
 
 v.
 
 Cousmaker,
 
 (12
 
 Vesey,
 
 155,) the question arose whether a voluntary settlement after marriage, was fraudulent as to creditors. — . Sir
 
 William Grant,
 
 master of Rolls, said, “though there had been much controversy, and a variety of decisions upon the question whether such a settlement is fraudu
 
 *215
 
 lent as to any creditors except such as were creditors at the time, I am disposed to follow the latest decision, that of
 
 Montague
 
 v. Lord ’Sandwich, which is that • the settlement is fraudulent only as against such creditors at the'time.” The master of the Rolls did not reflect that if the deed was fraudulent and void under the statute of 13
 
 'Elizabeth,
 
 it necessarily must be so altogether ; for if a part be void by virtue of a statute, the rule is that the whole is void ; neither did he remark that the bill in the case that governed him, was not filed by creditors. In the case of
 
 Reade
 
 v.
 
 Livingston,
 
 (3
 
 Johnson, C. Rep.
 
 481,) the Chancellor of New-York has collected - and remarked on all the cases, both at law and in Equity, up to the time of that decision. He brought his mind to the conclusion that a voluntary conveyance made by a man indebted at the time, was in law, fraudulent as to those who were creditors at the time, but only presumptive evidence of an intent to defraud as to subsequent creditors. He says, that as to prior creditors, “the presumption of law ip this case, does not depend, upon the amount of the debts, or the extent of the property in settlement, or the circumstances of the party.” I think Chancellor
 
 Kent
 
 stands alone upon the aforesaid' doctrine. My opinion is the same as that given by the master of the Rolls, in the case of
 
 Richardson
 
 v.
 
 Smallwood, (
 
 1
 
 Jacobs,
 
 552.) He there says being indebted is only
 
 one circumstance from which evidence of the fraudulent intention may be drawn.
 

 The question is whether the court is satisfied that the deed was within the purview of the statute, that it was made to hinder and delay his creditors by placing the property out of their reach ; if it was, then the deed is void by the statute. The master of the Rolls goes on then further to remark, “ and if it be once shown that it is a deed which as against any of the creditors cannot stand, then the property becomes assets and is applicable to the payment of debts generally; all the creditors come in at whatever times their debts may have arisen: that.” he says, “is decided.”
 
 Ibid 55
 
 8. The foregoing decision was made in the year 1822, and is the last on the sub
 
 *216
 
 ject I have seen in the Chancery Reports* To make void a voluntary conveyance it must appear to have been executed for the purpose of defrauding creditors.
 
 Wrixon
 
 v.
 
 Cotter.
 
 (1
 
 Chitty’s Digest
 
 300, who quotes
 
 Ridgw. P. C.
 
 295.) The principles contained in the case of
 
 Richardson
 
 v.
 
 Small,xvood,
 
 arc in accordance with these delivered by Lord
 
 Mansfield
 
 in
 
 Cadogan
 
 v.
 
 Kennett.
 
 These rules are approved of by Lord
 
 Manners
 
 in the case of
 
 Grogan
 
 v.
 
 Cooke.
 
 (2
 
 Ball
 
 and
 
 B.
 
 234.) This opinion will not run in conflict with that of
 
 Doe
 
 v.
 
 Manning,
 
 (9
 
 East.
 
 59.) — That was the case of a purchaser, and the decision was not under the statute of the 13th of Elia. but under the 27"th
 
 Etica.
 
 Even in that case Lord
 
 EUenborough
 
 said that nothing but the decisions that had been previously made governed him, for if it was
 
 res integra
 
 he probably would have come to very different conclusions. This opinion does not clash with
 
 McRee
 
 v. Houston, (2
 
 Murph.
 
 429,) for that was a decision upon our act of 1784,
 
 (Rev. c.
 
 225.) I understand the Judge who tried the case now before us, to have charged the jury, that a voluntary deed which would be good against existing creditors, might become void as to the same creditors if the property reserved by the donor should happen to be destroyed by casualty or accident, when there had not been any delay in the creditors in endeavoring to obtain their debt. I think he erred in this part of his charge, for if the deed was not fraudulent and void as to the creditors, at its execution, no subsequent casualty or accident could makb it void. In
 
 Doe
 
 v.
 
 Routledge, (Cowp.
 
 710,) Lord
 
 Mansfield
 
 says “ a custom has prevailed and leant extremely to construe voluntary settlement fraudulent against creditors.” But if the circumstances of the transaction show it was not fraudulent at the time, if is not within the meaning of the statute though no money was paid.—
 
 O’Daniel
 
 was possessed of personal property of the value of five or six hundred dollars at the date of the conveyance and he reserved to himself a life estate in the land ; he owed two small debts — and must we say from these facts Ümt he made the conveyance for the intent and purpose “ to hinder and delay” these two creditors?
 
 *217
 
 Policy may call for such a decision, but I cannot bring my mind to believe it is within the meaning of the Le-gisiature which passed the statutes. My associates think otherwise and the law upon this point may now be considered as settled. I think a new trial should be granted
 

 Per Curiam — Judgment affirmed.